William L. BINGHAM, Plaintiff,

v.

The TERMINIX INTERNATIONAL COMPANY, L.P., Allied Bruce Terminix Company, Inc., Miles, Inc. and FMC Corporation, Defendants.

Civ. A. No. 4:93–CV–44(L)(C).

United States District Court,
S.D. Mississippi,
Eastern Division.

May 27, 1994.

Thomas Jones, Jr., Bourdeaux & Jones, Meridian, MS, George S. Monroe, II and George S. Monroe, Newton, MS, for plaintiff.

W. Price Elliott, Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, Rebecca L. Wiggs, Watkins & Eager, Jackson, MS, James L. Moore, J. Greg Dow, Holtzman & Urquhart, Houston, TX, and Brooks R. Buchanan, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants The Terminix International Company, L.P. (Terminix International) and Allied Bruce Terminix Company, Inc. (Allied Bruce Terminix) for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff William L. Bingham has responded to the motion. The court has considered the memoranda of authorities submitted by the parties, and concludes that the motion is well taken and should be granted.

The court previously entered a memorandum opinion and order in this cause on March 28, 1994, granting in part and denying in part motions of defendants Miles, Inc. and FMC Corporation for summary judgment, 850 F.Supp. 516. The facts alleged by plaintiff are set forth in that opinion and will not

be repeated here, except to note plaintiff's allegations that as a result of his exposure to certain insecticides, Pryfon 6 and Permethrin, applied in his home by Allied Bruce Terminix Company, Inc., he suffered complications with asthma, and developed lung cancer. On the basis of these allegations, plaintiff has asserted causes of action against Terminix International and Allied Bruce Terminix for negligence, breach of an implied warranty of merchantability, failure to warn and strict liability.

On the present motion, these defendants seek summary judgment as to each of plaintiff's causes of action to the extent they are based on an allegation that the insecticides these defendants applied caused his lung cancer. They maintain, relying on the court's earlier opinion of March 28, 1994, that plaintiff lacks proof that either Pryfon 6 or Permethrin is a carcinogen. In that opinion, the court found that summary judgment was appropriate for Miles, Inc. and FMC Corporation, the manufacturers of Pryfon 6 and Permethrin, respectively, as to plaintiff's claim that those defendants had "willfully and recklessly" distributed "cancer-causing products," explaining as follows:

> In his negligence count, plaintiff seeks to impose liability against defendants for "willfully and recklessly using a potential cancer-causing product, i.e., Pryfon and Permethrin." Miles and FMC have moved for summary judgment as to this claim on the basis that their products are *not* "cancer-causing." In support of [their] motions, defendants have submitted affidavits of toxicologists who state that the products at issue are not carcinogens.[1] In response to defendants' motion, plaintiff has submitted an affidavit of Dr. Arthur Hume, a toxicologist and professor in the Department of Pharmacology and Toxicology at the University of Mississippi Medical Center (UMC) and the Director of UMC's Poison Control Service. Dr. Hume attests in his affidavit that he is familiar with the defendants' products and that to his knowledge, neither Permethrin nor Pryfon "ha[s] been tested for carcinogenicity properties in humans nor [have they] been tested in the concentration used in treating Plaintiff's home, nor [have they] been tested in the presence of other chemicals ... which [they] might enhance or be enhanced in carcinogenic activities." Plaintiff argues that in light of Dr. Hume's affidavit, there exists the "immeasurably significant" disputed factual issue of whether defendants' products cause cancer. That, however, simply is not so. Indeed, Dr. Hume's affidavit not only does not create an issue of fact on the issue, but appears to undercut plaintiff's cause of action. Dr. Hume does not opine that defendants' products cause cancer; to the contrary, he states that there has *never been any testing* of these products to determine whether they may cause or contribute to cancer. In other words, according to Dr. Hume's own affidavit, there is no proof that defendants' products cause cancer.

■ In response to the motion presently before the court, plaintiff argues that in its earlier ruling, the court impermissibly shifted the burden of proof to the plaintiff to prove, at the summary judgment stage, the likelihood of these chemicals' causing cancer in humans and that the court's ruling was further in error as it eliminated part of plaintiff's claim "prematurely, [and] without the benefit of complete discovery." The court rejects both contentions.[2]

---

1. Dan Van Goetham, a toxicologist with Miles, states in his affidavit, "I am familiar with the health effects of chronic and acute exposure to Pryfon 6 as revealed by numerous studies. Exposure to Pryfon 6 does not cause cancer." In his affidavit, Dr. Martin Fletcher, a toxicologist with FMC, states that he is familiar with the health effects of Permethrin, the active ingredient in FMC's product, Dragnet FT, and that "Permethrin's potential for induction of oncogenicity in experimental animals is low and the likelihood of oncogenic effects in humans is nonexistent or extremely low. There have been no reports that Dragnet FT or Permethrin has caused cancer in humans."

2. Because the present motion is premised on the conclusions in the court's earlier opinion, and since plaintiff's response challenges those conclusions, the court is effectively called upon to again address the issues presented in the earlier motion as it pertains to this causation issue. This is so even though plaintiff has not requested that the court reconsider or amend that ruling.

On the issue of the burden of proof, plaintiff insists that at the summary judgment stage, it did not, and does not have the burden to prove the likelihood that the chemicals manufactured and applied by the various defendants cause cancer. Presumably it is his position that because the issue was presented to the court in the context of a summary judgment motion, then it was the defendants' burden to prove that the chemicals do not cause cancer. Plaintiff has apparently overlooked the language of Rule 56, and the Supreme Court's holding in *Celotex v. Catrett Corp.*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), wherein the Court explained what is required of a nonmovant to avoid the entry of summary judgment. The Court stated that a nonmovant, in order to withstand a properly supported motion for summary judgment, may not rest on the allegations of his pleadings, but must come forward with specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Further, the court explained:

> In our view, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party *who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.* In such a situation, there can be "no genuine issue as to any material fact", since *a complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial.*

*Id.* at 322, 106 S.Ct. at 2552 (emphasis added). Finally, the Court made it clear that a party not bearing the burden of proof at trial may discharge his summary judgment burden by showing the absence of an essential element of his opponent's case, *id.* at 323, 106 S.Ct. at 2552, such as causation.[3] That is, the movant need not negate the nonmovant's claim, but instead may discharge its burden by demonstrating the absence of evidence to support the nonmovant's case.

In the present case, defendants FMC and Miles undertook to do both. They presented evidence that their products do not cause cancer, or that the likelihood that the products cause cancer is "nonexistent" or "extremely low,"[4] and they pointed out that the plaintiff had no proof to the contrary. Based on defendants' proof, *and* on the plaintiff's lack of proof, the court concluded, in accordance with *Celotex*, that summary judgment was proper. The court held plaintiff only to the burden prescribed by *Celotex*, and therefore, plaintiff's first contention is without merit.

Plaintiff next challenges what he characterizes as the court's conclusion that the affidavit of Dr. Martin Fletcher, which was submitted by FMC, established that Permethrin does not cause cancer in humans. He states he finds it "difficult to understand how the Court can conclude that Permethrin will not cause cancer when defendants' own expert won't go that far." The court, however, *did not hold* that Permethrin is not a carcinogen. Rather, the court held that FMC had presented proof that Permethrin is not likely a carcinogen, and that plaintiff had offered no proof to the contrary. Plaintiff, in fact, had presented an affidavit, that of Dr. Hume, which tended to establish that plaintiff *cannot show* that Permethrin causes cancer since no tests have been conducted to determine whether it causes cancer. While, as plaintiff points out, Dr. Fletcher's affidavit did not exclude the *possibility* that Permethrin has oncogenic effects (stating that "the likelihood of oncogenic effects in humans is nonexistent or extremely low"), the fact that FMC's proof left open this slight possibility could not preserve plaintiff's claim since the claim could not stand on nothing more than a mere possibility. There still is no competent record proof that would support plaintiff's allegation that Permethrin causes cancer, or

---

**3.** It is indisputable that proof of causation, i.e., proof that plaintiff's cancer was caused or contributed to by his exposure to the subject chemicals, is an essential element of plaintiff's claims seeking damages for his cancer.

**4.** *See supra* note 1.

more particularly, that it is likely that this product caused or contributed to his cancer.

■ Plaintiff also maintains that the court "prematurely" granted summary judgment for both defendant Miles and FMC on the negligence claim since plaintiff had not had the "benefit of complete discovery." He contends that he still has not had the "benefit of complete discovery." Plaintiff's position in this regard is based on his claim that Miles has not provided him with information as to other chemical compounds or substances included in Pryfon 6, and he contends that "[f]urther discovery, at least to the extent of learning other chemical compounds, of (sic) substances that are included in Pryfon should be part of this litigation." He argues that since the chemical compounds and substances comprising Pryfon 6 are not known, then the question whether the mixing of Permethrin and Pryfon 6 (in the sense of applying both pesticides in the same area over a given period of time) can have carcinogenic effects is still "open." Plaintiff therefore asserts that it would be "wrong to deny plaintiff the opportunity to develop its case with regard to these chemicals and their possibility of causing cancer," and urges the court not to commit the same error on the motion presently under consideration as it did on the earlier motion. Several points are in order as to this argument.

Plaintiff advises that he propounded an interrogatory to Miles on August 4, 1993, within the time provided, seeking information as to the "other chemical compounds or substances included in Pryfon 6," to which Miles responded that a confidential statement of formula would be provided upon the entry of an appropriate protective order. However, no such order was ever entered and the requested information was never furnished. Though plaintiff requested this information in August 1993, and Miles did not furnish the information despite its representation that it would do so, there is no indication whatsoever that plaintiff ever pursued this matter, either before or after the earlier opinion was entered. He has not moved to compel or otherwise endeavored to secure this information. Moreover, in his response to Miles' motion for summary judgment, plaintiff did not contend that any additional information was required in order for him to adequately respond to the motion. He did not mention the interrogatory request or so much as intimate the need for any further discovery. Nor did plaintiff suggest that the court should await the completion of discovery before ruling. Rather, he simply responded to the motion with Dr. Hume's affidavit and left it at that. And Dr. Hume recited in his affidavit that he was "familiar with" Pryfon 6. That plaintiff would now contend that the court, in ruling as it did and *when* it did on the earlier motion, acted "prematurely, without the benefit of complete discovery" is surprising, to say the least.

Plaintiff protests that the court, if it grants the present motion, will "deny [him] the opportunity to develop its [sic] case," and that such a ruling would be "wrong," meaning, the court assumes, unfair to plaintiff. However, there is no basis in the record for concluding that plaintiff has not had adequate opportunity to "develop his case." The original discovery deadline established in this case was January 6, 1994. Thereafter, plaintiff moved to extend the scheduling order deadlines by forty-five days so that he could have additional time within which to designate expert witnesses. The motion was granted, and a first amended scheduling order was entered on November 18, 1993, extending the discovery deadline to February 25, 1994. A second amended scheduling order was entered February 9, 1994, upon motion of defendant Allied Bruce Terminix, under which the deadline for discovery was April 26, 1994. No further extensions have been requested by any party, and the deadline for discovery has now passed. The only information which plaintiff complains he was unable to obtain through discovery is that relating to the chemicals and substances which are included in Pryfon 6. The court would reiterate, though, that not until now, after discovery has expired, and after plaintiff has sustained one adverse ruling on a summary judgment motion and is threatened with another, did plaintiff advise the court that this information was even relevant to any issue in the case. Plaintiff has not availed himself of any available avenue of compelling Miles' furnishing this information, even though over nine

months have passed since it was first requested. Given these circumstances, plaintiff can hardly be heard to complain now, at this late date, that he has been "deprived" of any opportunity to "develop" his case.[5] The court cannot conclude that further discovery should be permitted prior to ruling on this motion. It follows that partial summary judgment is proper for the Terminix defendants as to each of plaintiff's claims that are based on an allegation that the application of Pryfon 6 and Permethrin in his home caused or contributed to his lung cancer.

Accordingly, it is ordered that the motion of defendants Terminix International and Allied Bruce Terminix for partial summary judgment is granted.

---

5. Though certainly it is not a prerequisite to obtaining additional discovery, it is notable, given the amount of time that has passed in the case and what has transpired in terms of discovery, that plaintiff has not suggested to the court that he has any reason to believe or to suspect that any other chemical or substance in Pryfon 6 would be expected to be carcinogenic when used in combination with Permethrin.