896 F.Supp. 642 (1995)
William L. BINGHAM, Plaintiff,
v.
The TERMINIX INTERNATIONAL COMPANY, L.P., Allied Bruce Terminix Company, Inc., Miles, Inc., and FMC Corporation, Defendants.
Civ. A. No. 4:93CV44LN.
United States District Court, S.D. Mississippi, Jackson Division.
June 19, 1995.
Thomas Jones, Jr., Bourdeaux & Jones, Meridian, MS; George S. Monroe, II, George S. Monroe, Newton, MS, for plaintiff.
Stacy Bo Russell, Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, for Terminix and Allied Bruce.
Rebecca L. Wiggs, Watkins & Eager, Jackson, MS, James L. Moore, J. Greg Dow, Holtzman & Urquhart, Houston, TX, for Miles, Inc.
Brooks R. Buchanan, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for FMC Corp.

MEMORANDUM OPINION AND ORDER
TOM S. LEE, District Judge.
This cause is before the court on the separate motions of defendants Miles, Inc. (Miles), FMC Corporation (FMC), and The Terminix International Company, L.P., and Allied-Bruce Terminix Company (the Terminix defendants) for summary judgment.[1] Plaintiff William L. Bingham has responded to each of these motions.[2] The court has considered the memoranda of authorities, together with attachments, submitted by the parties and concludes that the motions of Miles and FMC should be granted, and the motion of the Terminix defendants should be granted in part and denied in part.
*643 Plaintiff filed this action alleging that he developed cancer and asthma as a result of his exposure to termiticides manufactured by Miles and FMC, and applied to his home by the Terminix defendants. He asserted various theories for recovery against the defendants, including strict liability, negligence, failure to warn, failure to test, and breach of warranties. Earlier in this cause, this court granted summary judgment as to certain of plaintiff's claims against the manufacturing defendants, FMC and Miles, since the court concluded that all claims predicated on deficiencies in the warnings included on the product labels were preempted by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA). Bingham v. Terminix Int'l Co., 850 F.Supp. 516 (S.D.Miss.1994). Subsequently, the court dismissed plaintiff's claims against the defendants based on his allegation that the products at issue caused his cancer; the court concluded that plaintiff failed to present proof to satisfy a critical element of his case, namely, causation. Bingham v. Terminix Int'l Co., 158 F.R.D. 97 (S.D.Miss.1994). Following those rulings, there remain before the court a number of claims premised on plaintiff's allegation that Miles' product, Pryfon 6, which Terminix applied to treat his home for termites beginning in 1989 and continuing through 1991, caused him to develop asthma, and that FMC's product, Dragnet FT, to which Terminix ultimately resorted in the battle against termites at the Bingham home, exacerbated his asthmatic condition. On their present motions, defendants contend that the claims remaining against them must be dismissed since the plaintiff, after adequate time for discovery, has failed to develop any proof that he was exposed to these products, or that any exposure he may have had to these products caused or aggravated his asthma, or that the products at issue were defective. The court first considers the motions of the manufacturer defendants.
Essentially, the reasons cited by plaintiff for subjecting the manufacturers to liability are as follows: The manufacturers failed to test the effect of chronic low-level exposure of their products to hypersensitive individuals such as Mr. Bingham; had they adequately tested their products, they would have known that the products posed a risk of harm to such individuals. Further, because these products posed a potential for harm to hypersensitive individuals such as Mr. Bingham, the products were thus unreasonably dangerous and the manufacturers thus had a duty either to not market the products at all, or alternatively, to warn that they presented this risk of harm to hypersensitive persons such as Mr. Bingham. None of these theories is sufficient, either in fact or in law, to support a judgment against the manufacturer defendants.
Whether the claim is for negligence or strict liability, in order to prevail in a products liability case, the plaintiff must prove that the product in question is defective by design, by manufacture, or by reason of inadequate warnings. See Jackson v. Johns-Manville Sales Corp., 727 F.2d 506, 515 (5th Cir.1984), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). Here, the plaintiff does not contend that there was a manufacturing defect in either of these defendants' products. And, as this court has previously concluded FIFRA preempts any claim he may have predicated on a failure to warn. Thus, plaintiff can only succeed if he proves that the products at issue have a design defect.
Initially, Dr. Arthur Hume, upon whose expert opinion plaintiff primarily relies, suggested that both products, given their chemical compositions, could be associated with asthma. He now appears to contend only that Pryfon 6 can cause, and Dragnet FT can aggravate, asthmatic conditions in "hypersensitive" individuals. He counts Mr. Bingham among such "hypersensitive" individuals in light of Mr. Bingham's medical history, which included respiratory problems in the two to three years preceding his exposure to these products.[3] In this vein, Dr. *644 Hume has repeatedly expressed his view that Mr. Bingham, because of his history of respiratory tract problems, was "hypersusceptible" to the inhalation and effects of the chemicals in these products so that even a small amount of either chemical, i.e., an amount applied in accordance with label directions, could cause or aggravate asthma.[4] It is true that Dr. Hume has provided affidavits in which he characterizes these products as "unreasonably dangerous." It is apparent, however, that the basis for this conclusion is Dr. Hume's opinion that defendants' products presented this risk of harm to hypersensitive individuals. Indeed, the court has searched the record in vain for evidence that these products, Pryfon 6 and Dragnet FT, when applied in accordance with label directions, are likely to cause or contribute to an asthmatic condition in persons who are not "hypersensitive."
During his deposition, Dr. Hume was queried at length concerning both defendants' products, with specific reference to whether they were defective and unreasonably dangerous. He deemed neither product defective in its composition or unreasonably dangerous, in the sense of its "sticking out there like some monster."[5] Moreover, he recognized the usefulness of these products, acknowledging that as long as there are termites, "[y]ou've got to have [termiticides]." Further, Dr. Hume would not say that these termiticides should not be used. And even though in his affidavits, which are of more recent vintage, Dr. Hume now opines that both products are unreasonably dangerous, he does not say that they should not be used *645 at all, but rather that they should not be used around "hypersensitive" persons such as Mr. Bingham.
Ultimately, Dr. Hume does not contend, and there is otherwise no basis for concluding that the products at issue should not have been marketed. A manufacturer has no duty to withhold its product from the market merely because the product may pose a risk to certain hypersensitive individuals. Perhaps a manufacturer would have a duty to warn such individuals under some circumstances.[6] But in this case, as the court has heretofore explained, plaintiff's claims premised on a failure to warn are preempted.
Because in the court's view, even accepting as true Dr. Hume's opinion that these products pose a hazard to persons such as Mr. Bingham, the claims boil down to the adequacy of the defendant manufacturers' warnings and whether the label should have addressed warnings to hypersensitive persons, plaintiff's claims against the manufacturer defendants must fail.[7]
Plaintiff's claims against the Terminix defendants for strict liability, failure to warn and failure to test are subject to dismissal for the same reasons set forth with regard to the manufacturer defendants. However, the court concludes that summary judgment should be denied on the remaining claim for negligent misapplication of chemicals. Though these defendants argue that they applied both chemicals strictly in accordance with label directions, the court finds that there are genuine issues of material fact as to this claim that preclude the entry of summary judgment.
Based on the foregoing, it is ordered that the motions of defendants Miles and FMC for summary judgment are granted. It is further ordered that the motion of the Terminix defendants is granted in part and denied in part, as set forth herein.
NOTES
[1] These are the third summary judgment motion filed by defendants Miles and FMC, and the second summary judgment motion filed by the Terminix defendants.
[2] Since the filing of these motions, Mr. Bingham has died and his estate has been substituted as the plaintiff. Nevertheless, the court will herein refer to Mr. Bingham as the plaintiff.
[3] Whether Mr. Bingham was ever actually exposed to either of these products is a subject of dispute between the parties. The court is of the opinion that plaintiff has presented sufficient evidence of exposure to withstand the defendants' motions. However, that conclusion does not detract from the court's conclusion that the manufacturing defendants are nevertheless entitled to summary judgment.
[4] Plaintiff's responses to defendants' motions are accompanied by two affidavits signed by Dr. Hume. In one, he states his opinion that "pryfon can have an adverse effect on a hypersensitive individual such as William L. Bingham," and that "because of the hypersensitivity of other individuals in society with [lung problems similar to those of Mr. Bingham], Pryfon is unreasonably dangerous to and should not be used in the presence of such persons." In the second affidavit, he opines that Dragnet FT "can have an adverse affect [sic] on hypersensitive individuals such as Mr. Bingham," and that "[b]ecause of this hypersensitivity I am of the opinion that Dragnet FT is unreasonably dangerous to and should not be used in the presence of persons in the population such as Mr. Bingham."
[5] Initially, Dr. Hume was asked whether he knew of any less toxic termiticides than Pryfon 6; he did not. He was then asked the following question:

Q. Since you cannot tell us that there is a less toxic termiticide on the market, you're not going to testify in this case that Pryfon 6 is an unreasonably dangerous product, are you?
A. No, I don't think so.
He stated further:
Q: You're not going to testify that Pryfon 6 is defective or unreasonably dangerous in this case, are you?
A. Or unreasonably dangerous. I don't know  From a scientific answer to that, if it is legal, I don't see it as being defective in its composition 
Q. I'm asking you from a scientific standpoint.
A. Yeah. I'm trying to roll around and do it both ways, maybe. That it's not defective in the sense that it's an aberrant compound that's unreasonably dangerous. Scientifically I don't  I'd have to answer that I don't think I would. I don't think I see that. It's not sticking out there like some monster.
Dr. Hume was also asked about permethrin, the primary ingredient in Dragnet FT:
Q. As Mr. Moore asked you concerning [Pryfon 6] and its use and what you would testify at trial or give an opinion, it's not  Let me ask you the same thing or same type of question with respect to Dragnet FT, and that would be that  I guess you're not of the opinion or would not testify that Dragnet FT is considered a dangerously defective product.
A. No, I don't think it's  I don't think it's dangerously defective.
. . . . .
Q. And Dr. Hume, I ask you the same question with respect to Dragnet FT in the same scientific context that you responded to Mr. Moore's question.
A. Yeah. I would answer it the same. I don't see it sticking out there. The literature or the reports I've read wouldn't point the finger at either one of them as far as anything like that.
. . . . .
Q. You're not of the opinion that permethrin should be banned or taken off the market, are you?
A. Oh, no. No.
Q. .... I guess you recognize the benefits of permethrin as used in treating termites?
A. Yeah, I think so.
Q. .... I guess you're not of the opinion or would not testify that Dragnet FT is considered a dangerously defective product.
A. No, I don't think it's  I don't think it's dangerously defective.
[6] It has generally been held that a product is not defective merely because it causes injury "to certain individuals who, because of hypersensitivity or other peculiarity of makeup, suffer an allergenic or idiosyncratic reaction when exposed thereto." Products Liability: Strict Liability in Tort Where Injury Results from Allergenic (side-effect) Reaction to Product, 53 A.L.R.3d 298, § 3 (1973) (collecting cases). However, there are cases where courts have found a duty to warn. See, e.g., Reyes v. Wyeth Labs., 498 F.2d 1264 (5th Cir.1974).
[7] Plaintiff also has alleged a failure to test claim, contending, apparently, that had these defendants done more testing of their products, they would have discovered the potential for harm to hypersensitive persons. While the intended parameters of this claim are not clear, in the circumstances presented, the court views this claim as so closely related to the failure to warn claim that with the collapse of the failure to warn claim, this claim falls as well.