Calvin **FLOYD** on behalf of himself and as Trustee Ad Litem of Hilda Odessa Floyd, Plaintiff,

v.

**BROWN & WILLIAMSON TOBACCO CORP.**, British American Tobacco Industries, Liggett Group Inc., Lorillard Tobacco Co., Philip Morris U.S.A., R.J. Reynolds Tobacco Co., and R.J.R. Nabisco Inc., Defendants.

No. CIV. A. 00–2952.

United States District Court, E.D. Pennsylvania.

April 2, 2001.

Calvin Floyd, pro se, Pittsburg, PA.

J. Kurt Straub, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, for Liggett Group Inc.

Brendan J. Torregrossa, Dechert Price & Rhoads, Philadelphia, PA, for Phillip Morris U.S.A., R.J. Reynolds Tobacco Co.

*MEMORANDUM*

DuBOIS, District Judge.

Presently before the Court are two motions to dismiss the Complaint—the Joint Motion of Defendants Philip Morris Incorporated (incorrectly named Philip Morris U.S.A.) ("Philip Morris") and R.J. Reynolds Tobacco Company ("R.J.Reynolds") ("Joint Motion") (Document No. 3, filed June 16, 2000) and the Motion of Defendant Liggett Group Inc. ("Liggett") (Document No. 4, filed June 23, 2000). For the reasons set forth below, the motions will be granted in part and denied in part as to all defendants.

## I. PROCEDURAL HISTORY

On February 8, 2000, plaintiff Calvin Floyd ("plaintiff" or "Floyd") filed a *pro se* Complaint in the Philadelphia County Court of Common Pleas on behalf of his deceased mother and himself against the defendant cigarette manufacturers for injuries allegedly sustained as a result of smoking cigarettes. Plaintiff seeks compensatory damages and punitive damages from each defendant, on the following causes of action, set forth in 13 counts: (1) failure to warn; (2) design defect; (3) negligence; (4) gross negligence; (5) fraudulent misrepresentation; (6a)[1] negligent misrepresentation; (6b) intentional infliction of emotional distress; (7) fraud and deceit; (8) breach of implied warranty; (9) breach of express warranty; (10) strict liability; (11) violation of consumer protection statutes; (12) conspiracy to misrepresent and conceal the material facts; and (13) civil conspiracy.

On June 9, 2000, Philip Morris and R.J. Reynolds removed the action to this Court, on diversity grounds. On June 16, 2000, Philip Morris and R.J. Reynolds jointly

---

**1.** In the Complaint, claims 6a and 6b were included under one count. For ease of discussion, the Court will deal with them as separate causes of action, where appropriate.

moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Liggett separately moved to dismiss under Rule 12(b)(6) on June 23, 2000. Numerous defenses are raised in the two motions including statute of limitations and failure to plead with specificity.

## II. Background

The case is based on plaintiff's allegations that his mother's death and his health problems were caused by cigarette smoking. The background facts as set forth in the Complaint may be summarized as follows:

Plaintiff began smoking cigarettes in 1959 and smoked for 28 years thereafter. *See* Complaint ¶¶ 9, 10. It is unclear from the Complaint in what year he finally stopped smoking—he says both 1987 and 1988. *See* Complaint ¶¶ 9, 10, 17. In From 1959 to 1965, plaintiff smoked Camels and Pall Malls; in 1965 he switched to Tarytons and Salems. In 1966, plaintiff resumed smoking Pall Malls, which he continued to smoke, together with Kools and Newports, until 1987 or 1988. *See* Complaint ¶¶ 14–16. Plaintiff does not identify the manufacturers of the brands of cigarettes he says he smoked.[2]

In 1989, plaintiff was treated in a Pittsburgh hospital for chest pains and hypertension "soon" developed. Plaintiff also complained of arrhythmia and palpitations at that time. During the 1990s, the exact dates are not clear from the Complaint, plaintiff was given medication for hypertension. *See* Complaint ¶¶ 17–18.

Plaintiff's mother, Hilda O. Floyd died in August 1988. She began smoking in 1942 at age 18. She smoked Lucky Strike, Old Gold, Phillip Morris, Chesterfield, Pall Mall, L & M, Winston, Salem, Marlboro, Belair, Newport, Kool, Camel, and Parliament brand cigarettes. *See* Complaint ¶¶ 1–8.

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in a complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The Court must only consider those facts alleged in the complaint in considering such a motion. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). A complaint should be dismissed if "it is clear that no relief could be granted under any set of

---

**2.** For informational purposes, but not relied upon in this Memorandum, the Court notes that Brown and Williamson Tobacco Corp. ("B & W") manufactured Taryton, Lucky Strike, Pall Mall, Belair, and Kool brands. *See* Brown and Williamson Tobacco Corp., 1999 Annual Review (1999), *available at* http://www.brownandwilliamson.com/3_library/1_annualreview/ 1999annual_review_frame.htm. Lorillard Tobacco Co. ("Lorillard") manufactured Old Gold and Newport brands. *See* Loews Corp., Loews 1999 Annual Report 8 (1999), *available at* http://www.loews.com/loews_1998_annual_report.htm. Philip Morris manufactured Philip Morris, Marlboro and Parliament brands. *See* Philip Morris, Our Tobacco Business, *available at* http://www.philipmorris.com/tobacco_bus/tobacco_popup.html. In 1999, Philip Morris acquired Chesterfield and L & M brands from Liggett. *See id.;* Liggett Group Inc., Corporate, *available at* http://www.liggettgroup.com/Corporate.htm. R.J. Reynolds manufactures Winston, Salem and Camel brands. *See* R.J. Reynolds Tobacco Holdings, Inc., 1999 Annual Report (online), *available at* http://www.rjrt.com/IN/Pages/INPubs_cover.asp.

facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Plaintiff is proceeding *pro se* in this case. The Court is mindful of the instruction that it should broadly construe normal pleading requirements when handling *pro se* submissions. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").

## IV. DISCUSSION

### A. Wrongful Death and Survival Act Claims

■ Plaintiff asserts a wrongful death claim and a survival claim on behalf of his mother, Hilda Floyd, who died in August 1988. He attributes her death to smoking. *See* Complaint ¶ 7. The Court concludes that even if there was a causal link between smoking and her death, any claims made on behalf of Hilda Floyd are barred by the applicable statute of limitations.

■ "Federal courts sitting in diversity cases must apply the substantive laws of the states in which they sit, and statutes of limitations are considered substantive." *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 487 (3d Cir.1985) (citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)); *Witherow v. Firestone Tire & Rubber Co.,* 530 F.2d 160 (3d Cir.1976). In Pennsylvania, the statute of limitations for wrongful death and survival actions is two years from the date of death. *See* 42 Pa. Cons. Stat. Ann. § 5524(2) (West 2000). Additionally, even if the cause of death is not discovered until much later, the discovery rule cannot be used to extend the time for filing wrongful death and survival actions beyond the statutory period. *See Pastier-*

*ik v. Duquesne Light Co.,* 514 Pa. 517, 523, 526 A.2d 323, 326 (Pa.1987).

As Hilda Floyd died in August 1988, the two-year statutory period for filing wrongful death and survival actions expired in August 1990. Therefore, plaintiff's wrongful death and survival actions against all defendants brought on behalf of Hilda Floyd must be dismissed. In view of this ruling, the Court need not address the remaining arguments made by the moving defendants with respect to the claims asserted on behalf of Hilda Floyd.

### B. Gross Negligence Claim—Count 4

■ Plaintiff pleads both negligence (Count 3) and gross negligence (Count 4) claims. Under Pennsylvania law, degrees of negligence are not generally recognized. *See Ferrick Excavating & Grading Co. v. Senger Trucking Co.,* 506 Pa. 181, 191, 484 A.2d 744, 749 (1984). Rather the term "gross negligence" refers to a standard of care, rather than to a separate claim. Therefore, the gross negligence count, Count 4, will be dismissed.

### C. Personal Injury Claims—Counts 1, 2, 3, 6b, and 10

Five of plaintiff's remaining personal injury claims, failure to warn (Count 1), design defect (Count 2), negligence (Count 3), intentional infliction of emotional distress (Count 6b)[3], and strict liability (Count 10), will be addressed together. With respect to these claims, plaintiff alleges that the cigarettes the defendants produced caused his hypertension, arrhythmia and palpitations. *See* Complaint ¶¶ 17–18. The Court concludes that all of these personal injury claims are barred by the applicable statute of limitations, and will be dismissed on that ground.

---

**3.** See note 1, *supra.*

Under Pennsylvania law, the statute of limitations for the above personal injury claims is two years. *See* 42 Pa. Cons.Stat. Ann. §§ 5524(2), 5524(7) (West 2000).[4] This applies to claims based upon theories of failure to warn, *see Clewell v. Upjohn Co.*, 1995 WL 708534, *3 (E.D.Pa. Nov.20, 1995) (citing 42 Pa. Cons.Stat. § 5524); design defect, *see Barnes v. American Tobacco Co.*, 984 F.Supp. 842, 857 (E.D.Pa. 1997); intentional infliction of emotional distress, *see Bartanus v. Lis*, 332 Pa.Super. 48, 480 A.2d 1178, 1186 (1984); *Bougher v. University of Pittsburgh*, 882 F.2d 74, 80 (3d Cir.1989); and negligence and strict liability, *see Dreischalick v. Dalkon Shield Claimants Trust*, 845 F.Supp. 310, 314 (W.D.Pa.1994).

 Usually, the statute of limitations for a claim which arises under Pennsylvania law begins to run at "the occurrence of the final significant event necessary to make the claim suable." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 152 (3d Cir.1998) (citing *Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20 (3d Cir.1966)). "As a general rule, it is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to initiate suit within the prescribed period." *Crouse v. Cyclops Indus.*, 560 Pa. 394, 403, 745 A.2d 606, 611 (Pa.2000) (citing *Hayward v. Medical Ctr. of Beaver County*, 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992)); *see also Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). In some cases, the application of the "discovery rule" will toll the running of the limitations period until "the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful act of another." *Wheeler v. Johns–Manville Corp.*, 342 Pa.Super. 473, 493 A.2d 120, 122 (1985). The commencement of the limitations period may be determined as a matter of law "where the facts are so clear that reasonable minds cannot differ." *Crouse*, 560 Pa. at 404, 745 A.2d at 611 (citing *Hayward*, 530 Pa. at 325, 608 A.2d 1040).

 Pennsylvania has long held that "[t]here are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." *Romah v. Hygienic Sanitation Co.*, 705 A.2d 841, 857 (Pa.Super.1997) (quoting *Deemer v. Weaver*, 324 Pa. 85, 90, 187 A. 215, 217 (Pa.1936)); *see also Crouse*, 560 Pa. at 404, 745 A.2d 606 at 611. Further, a plaintiff does not need to know that he has a cause of action, or even that an injury was caused by the wrongful conduct of another, but rather "once a plaintiff possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim." *Romah*, 705 A.2d at 857 (quoting *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 46 (3d Cir.1990)).

 A defendant has the burden of proof on a statute of limitations defense; a plaintiff has the burden of establishing that the discovery rule should apply. *See Gunsalus v. Celotex Corp.*, 674 F.Supp. 1149, 1153 (E.D.Pa.1987).

---

4. Section 5524(2) provides that "[a]n action to recover damages for injuries to the person ... caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two years.

Section 5524(7) provides that "[a]ny other action or proceeding to recover damages for injury to person which is founded on negligent, intentional, or otherwise tortious conduct ..." must be commenced within two years.

■ Plaintiff alleges in the Complaint that he began smoking in 1959, and smoked for 28 years thereafter. *See* Complaint ¶ 9, 10. He states he stopped smoking cigarettes in 1987 because he was "coughing up blood." *Id.* ¶ 10. He also says that in 1988, he smoked "sporadic[ally]." *See id.* ¶ 17. In 1989, plaintiff was admitted to a Pittsburgh hospital for chest pains and hypertension "soon" developed. *See id.* It is not clear whether he was still smoking in 1989, but his Complaint contains no allegations that he smoked after 1989. Plaintiff claims that "[u]ntil findings were exposed documenting nicotine's affect [sic] on the brain's pituitary glad [sic] that produces the vasoconstrictor chemical, I couldn't understand the doctor's insistence that I stop smoking." *Id.*

It is clear from the Complaint that plaintiff knew or should have known of his injury and its purported cause at the latest in 1989. From the allegation that he stopped smoking in 1987 because he was coughing up blood, it is inescapable that plaintiff correlated smoking to health consequences as early as 1987. Moreover, in the late 1980's, plaintiff's doctor "insisted" that he stop smoking. *See id.* ¶ 17. His allegation that he did not know the cause of his injuries until 1999 is inconsistent with these statements in the Complaint. *See* Complaint ¶ 19.

Moreover, warning labels have appeared on cigarette packages since 1966, and on cigarette advertisements since 1971, *see Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 514–15, 112 S.Ct. 2608, 2616–17, 120 L.Ed.2d 407 (1992), and since 1984, cigarette packages and billboard advertisements have carried the following warnings, among others: "SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy" and "SURGEON GENERAL'S WARNING: Quitting

Smoking Now Greatly Reduces Serious Risks to Your Health." 15 U.S.C. § 1333. Several courts have dismissed product liability and negligence cases against cigarette manufacturers by reason of the Surgeon General's warning and the well known dangers of cigarette smoking. *See Smith v. Brown & Williamson Tobacco Corp.,* 3 F.Supp.2d 1473, 1475 (D.D.C.1998) (dismissing product liability claims for injuries allegedly caused by cigarettes because of the Surgeon General's warning and because of the well known dangers of cigarette smoking); *Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 172 (5th Cir.1996) ("[T]he dangers of cigarette smoking have long been known to the community.").

Plaintiff argues that the because the cigarette manufacturers did not release certain documents relating to the dangers of cigarettes until recently, he did not have sufficient information to ascertain the cause of his injuries. That statement is insufficient to excuse plaintiff's failure to initiate a lawsuit asserting the claims of failure to warn, design defect, negligence, intentional infliction of emotional distress and strict liability within the statute of limitations period under the facts of this case. "Once a smoker learns of an injury and draws the causal connection between the injury and cigarette use, the smoker knows all he or she needs to know in order to commence an action: a manufacturer has placed a product on the market, and that product has caused an injury that was in no way intended or acceptable by any measure, medical or otherwise." *Arnold v. R.J. Reynolds Tobacco Co.,* 956 F.Supp. 110, 115 (D.R.I.1997) (holding that the Rhode Island statute of limitations did not toll for cigarette related injuries when the tobacco companies withheld information about the dangers of cigarettes). No further knowledge of wrongful conduct, such as allegedly hidden documents which pur-

port to show that the tobacco industry had long withheld its knowledge of the dangers of cigarettes and the addictive nature of nicotine, is needed to make an injured party aware of such potential causes of action. *See id.*

By 1989, with his doctor's warnings, his own correlation between smoking and coughing up blood, and the warnings on cigarette packages and billboards, plaintiff knew or should have known that cigarettes were a potential cause of his health problems. He had enough facts at his disposal by 1989 to institute a suit against cigarette manufacturers on the personal injury causes of action addressed in this section of the Memorandum, but he failed to do so until 2000. Because plaintiff did not file his claim within the limitations period, the personal injury claims asserted in Counts 1, 2, 3, 6b and 10 are time-barred and will be dismissed.

### D. Breach of Warranty Claims— Counts 8 and 9

 Plaintiff asserts two breach of warranty claims: breach of implied warranty (Count 8) and breach of express warranty (Count 9). In Count 8, plaintiff claims that the defendants breached an implied warranty on the theory that they were obligated not to sell a product which they knew was dangerous and addictive. In Count 9, he claims that the defendants breached an express warranty by advertising their product as being " 'cured,' *natural* tobacco offering consumers satisfaction, mildness and taste," but that the defendants did not fully warn about the dangers of their products. Complaint, Count 9. Both of these claims are barred by the statute of limitations and will be dismissed on that ground.

Under Pennsylvania law, the statute of limitations for breach of warranty claims is four years. *See* 13 Pa. Cons.Stat. Ann. § 2725 (West 2000), 42 Pa. Cons.Stat. Ann.

§ 5525(2) (West 2000). A cause of action for breach of warranty accrues when "tender of delivery is made," irrespective of the "aggrieved party's lack of knowledge of the breach." 13 Pa. Cons.Stat. Ann. § 2725(a)-(b). In other words, the statute of limitations will begin to run on the date of sale of the product.

 Implied warranties of merchantability and fitness for a particular purpose cannot explicitly extend to future performance. *See Antz v. GAF Materials Corp.,* 719 A.2d 758 (Pa.Super.1998); *Gunsalus v. Celotex Corp.,* 674 F.Supp. 1149, 1154–55 ("Unless there is an explicit warranty of future performance, the discovery rule will not toll the running of the statute of limitations" (*citing O'Brien v. Eli Lilly & Co.,* 668 F.2d 704, 711 (3d Cir.1981))). Since there are no allegations in the Complaint that plaintiff purchased or smoked cigarettes after 1989, the Court holds that the limitations period for a breach of implied warranty ran in 1993, and plaintiff's breach of implied warranty claim is therefore barred.

The Court reaches the same conclusion with respect to the claimed breach of express warranty. Without deciding whether what plaintiff asserts as a breach of express warranty in Count 9 constitutes breach of an express warranty, it is clear that plaintiff has not alleged any express warranty of future performance. Thus, the express warranty claim is barred because suit was not started within four years of the date of the last cigarettes purchased by plaintiff.

### E. Fraud and Concealment Based Claims—Counts 5, 6a, 7, 11, 12, and 13

Plaintiff's claims of fraudulent misrepresentation (Count 5), negligent misrepresentation (Count 6a), fraud and deceit

(Count 7), violation of the Pennsylvania consumer protection statutes (Count 11)[5], conspiracy to conceal the material facts (Count 12), and civil conspiracy (Count 13) are all based on allegations that the defendants concealed information about the harmful effects of tobacco and nicotine, and that defendants fraudulently represented cigarettes as being safe.

In response, defendants argue, among other issues, that these fraud and concealment based claims are barred by the Pennsylvania statute of limitations and that plaintiff fails to identify specific, actionable misrepresentations upon which they justifiably relied. In addition, Liggett avers in its Motion that plaintiff's Complaint against it must be dismissed because plaintiff does not allege he smoked any cigarettes manufactured by Liggett. For the reasons set forth below, all such claims will be dismissed without prejudice to plaintiff's right to file an amended complaint in accordance with the law set forth in this Memorandum within 45 days if warranted by the facts. The fact that plaintiff does not allege that he smoked Liggett cigarettes does not, without more, insulate Liggett from liability on the claims addressed in this section of the Memorandum under the pleaded facts. Therefore, if warranted by the facts, plaintiff will be permitted to file an amended complaint as set forth above with respect to Liggett as well as the other defendants.

1. *Fraud, Fraudulent Misrepresentation, Consumer Protection, and Concealment Claims—Counts 5, 7, and 11*

In fraud-based suits under the UTPCPL,[6] a plaintiff must allege reliance on the fraudulent representations of the defendants. *See Weinberg v. Sun Company, Inc.,* 740 A.2d 1152, 1167 (Pa.Super.1999). The same measure of reliance must be alleged in a claim of common law fraud. *See id.* at 1169. In addition, "the circumstances constituting fraud ... shall be stated [in the complaint] with particularity." Fed.R.Civ.P. 9(b). While plaintiff is proceeding *pro se,* and his pleadings must be construed liberally, plaintiff is not relieved of the requirements of Rule 9(b).

In a similar case, the City of Philadelphia and the Philadelphia Housing Authority sued lead pigment manufacturers and their trade association in an attempt to compel them to remove lead-based paint from buildings owned or managed by plaintiffs. *See City of Philadelphia v. Lead Indus. Assoc.,* 1992 WL 98482, *1 (E.D.Pa. Apr.23, 1992). Plaintiffs in that case alleged that, beginning in the 1920's, the defendants were aware of the harmful effects of lead-based paint but continued to market their paint for household use—they underwrote a research campaign "aimed at refuting the mounting evidence that lead-based paint was a hazardous product," and engaged in marketing and lobbying campaigns "to counter the in-

---

**5.** In light of the Court's duty to liberally construe *pro se* complaints, the Court interprets Count 11 to mean the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), specifically unfair and deceptive trade practices. *See* 73 Pa. Stat. Ann. § 201–1 et seq. (West 2000).

**6.** The elements of common law fraud must be proved under those sections of the UTPCPL grounded in fraud. *Weinberg v. Sun Company,* 740 A.2d at 1167. The elements of common law fraud are as follows: "1. a misrepresentation; 2. a fraudulent utterance thereof; 3. an intention by the maker that a recipient will thereby be induced to act; 4. justifiable reliance by the recipient upon the misrepresentation; and 5. damage to the recipient as the proximate result of the misrepresentation." *City of Philadelphia v. Lead Indus. Assoc.,* 1992 WL 98482, *5 (E.D.Pa. Apr.23, 1992) (quoting *Sowell v. Butcher & Singer, Inc.,* 926 F.2d 289, 296 (3d Cir.1991)).

creasingly bad publicity associated with lead paint." *Id.* at *5. The court dismissed plaintiffs fraud claims, stating

> The justifiable reliance element of fraud cannot be inferred merely from the allegations (1) that defendants launched a media, research and lobbying counteroffensive to improve the image of lead-based paint and (2) that at some point in time plaintiffs purchased lead-based paint. Indeed, plaintiffs do not even allege that their purchases were due, even in part, to this allegedly fraudulent media counter-offensive. They do not even allege that they lacked the knowledge, which was already developing in the public domain during the 1930's and 1940's, that lead based paint is harmful. There is simply no allegation of reliance, not even one that can reasonably be inferred.

*Id.* at *6. ·

■ In the case at bar, what can liberally be described as plaintiff's allegations of reliance are as follows: Plaintiff alleges that he was influenced by commercials and advertising, and that cigarettes are designed to look "wholesome" because they are "milk-white" in color, have "honey-colored filter[s]" shaped like a "nipple." Complaint ¶¶ 9, 19. The fraudulent acts pled by plaintiff are primarily acts of omission, although he also claims defendants "affirmatively represented that their product(s) were safe, suitable and fit for their intended purpose of human consumption, while knowing their product(s) held hidden dangers and sure addiction," and that they altered their research so as not to show that cigarettes were "addictive and dangerous."

■ Plaintiff does not state in the Complaint that defendants' alleged concealment of information led to his injuries. In cases not based on fraud, "a UTPCPL plaintiff must still establish that violation of the statute caused his or her loss."

*Weinberg v. Sun Company, Inc.,* 740 A.2d at 1169 (citing *DiLucido v. Terminix Int'l, Inc.,* 450 Pa.Super. 393, 676 A.2d 1237, 1241 (1996).) Plaintiff alleges no causal link between hidden documents and his injuries, except to say "literature that shed the necessary light on the branch of knowledge known as 'pharmacology,' which was conspiratorilly [sic] hidden, holds pertinent, fundamental information weighty enough to have provided a powerful impetus that could have rendered inpotent [sic] the enslaving addiction to nicotine, a highly toxic and dealy [sic] poison." By no means does this statement even begin to allege that a violation of the UTPCPL caused plaintiff's injuries.

■ Plaintiff has not alleged any specific misrepresentation upon which he relied or the details of the alleged concealment of the harmful effects of tobacco and nicotine by defendants and the dates on which he learned of the misrepresentations and concealed facts—his allegations can at best be categorized as vague and conclusory. In cases of corporate fraud, Rule 9(b) is relaxed to some extent, but "even under a non-restrictive application of the rule, pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Lead Indus. Assoc.,* 1992 WL 98482 at *7 (quoting *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989)). Even using a highly liberal interpretation of this rule because plaintiff is proceeding *pro se,* he has not pled sufficient details of these claims and his alleged reliance to avoid dismissal.

For the foregoing reasons, the fraud, fraudulent misrepresentation, consumer protection, and concealment claims included in Counts 5, 7, and 11 will be dismissed without prejudice to plaintiff's right to file

an amended complaint in accordance with the law set forth in this Memorandum if warranted by the facts.

### 2. *Negligent Misrepresentation—Count 6a*

■ Although Rule 9(b) does not govern claims of negligent misrepresentation, a plaintiff must plead negligent misrepresentation with a degree of specificity. *See Southern Seafood Co. v. Holt Cargo Sys., Inc.,* 1997 WL 539763, *11 n. 23 (E.D.Pa. Aug.11, 1997). The Complaint contains no allegations whatsoever concerning specific negligent misrepresentations. For that reason, and the reasons stated in the previous section, the negligent misrepresentation claim—Count 6a—will be dismissed without prejudice to plaintiff's right to file an amended complaint in accordance with the law set forth in this Memorandum within 45 days if warranted by the facts.

### 3. *Conspiracy Claims—Counts 12 and 13*

■ Plaintiff alleges in Counts 12 and 13 that defendants conspired to hide, misrepresent, and suppress evidence relating to the dangerousness of tobacco use and the addictiveness of nicotine. He alleges that he was injured by such conspiracy. To establish a civil conspiracy, plaintiff must prove: "(1) an agreement by two or more persons to perform an unlawful act or perform an otherwise lawful act by unlawful means; (2) an overt act accomplished in pursuit of that common purpose; and (3) actual legal damage." *Haymond v. Lundy,* 2001 WL 74630, *2 (E.D.Pa. Jan.29, 2001) (citing *Smith v. Wagner,* 403 Pa.Super. 316, 588 A.2d 1308, 1311–12 (1991)). The conspirator must have the requisite intent, and "[i]n addition, plaintiff must prove a separate underlying tort as a predicate for civil conspiracy liability." *Id.* (citing *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 407 (3d Cir. 2000)); *see also Gilbert v. Feld,* 842 F.Supp. 803, 822 (E.D.Pa.1993).

■ Plaintiff's Complaint fails to allege a civil conspiracy as required by law. Many of the alleged unlawful or tortious acts set forth in the Complaint are barred by the statute of limitations and will be dismissed with prejudice. The remaining tortious acts included in the complaint—those related to fraud, fraudulent misrepresentation, consumer protection, concealment and negligent misrepresentation—were not set forth with sufficient specificity and lacked allegations of reliance, as a result of which they will be dismissed without prejudice. That means that, on the present state of the record, plaintiff has failed to allege any unlawful or tortious acts sufficient to form the basis of a civil conspiracy. Moreover, excepting only his conclusions, plaintiff has failed to allege an agreement by two or more persons or companies. For all such reasons, the conspiracy claims—Counts 12 and 13—will be dismissed without prejudice to plaintiff's right to file an amended complaint in accordance with the law set forth in this Memorandum within 45 days if warranted by the facts. The Court's ruling with respect to the conspiracy counts applies equally to the allegations of conspiracy throughout the Complaint.

## V. CONCLUSION

The Court's conclusions with respect to the plaintiff's claims against the moving defendants are equally applicable to his claims against the other defendants.[7] For

---

7. The other defendants—Brown and Williamson Tobacco Corp., British American Tobacco Industries, Lorillard Tobacco Co., and R.J. Reynolds Tobacco Holdings, Inc., formerly known as R.J.R. Nabisco Inc.—contend that they have not been served with a Summons and copy of the Complaint, and have not appeared in this action.

that reason, and what is set forth above, the Order which follows will treat moving defendants and remaining defendants in the same way.

Plaintiff's personal injury claims set forth in Counts 1, 2, 3, 4, 6b, 8, 9 and 10, and all claims asserted on behalf of his mother will be dismissed with prejudice because they are barred under the applicable statute of limitations. The remaining claims—those alleging fraud, concealment, negligent misrepresentation, consumer protection, and conspiracy set forth in Counts 5, 6a, 7, 11, 12 and 13 will be dismissed without prejudice to plaintiff's right to file an amended complaint in accordance with the law set forth in this Memorandum within 45 days if warranted by the facts. An appropriate order follows.

### ORDER

**AND NOW**, this 2nd day of April, 2001, upon consideration of defendants Philip Morris Incorporated (incorrectly named Philip Morris U.S.A.) and R.J. Reynolds Tobacco Company's Motion to Dismiss (Document No. 3, filed June 16, 2000), defendant Liggett Group's Motion to Dismiss (Document No. 4, filed June 23, 2000) and plaintiff's Memorandum in Opposition to Defendants Philip Morris and R.J. Reynolds Motion to Dismiss (Document No. 6, filed July 18, 2000) and plaintiff's Memorandum in Opposition to Defendant Liggett Group's Motion to Dismiss (Document No. 5, filed July 18, 2000), for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED** that defendants Philip Morris, Incorporated and R.J. Reynolds Tobacco Company's Motion to Dismiss (Document No. 3) and defendant Liggett Group Inc.'s Motion to Dismiss (Document No. 5) are **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Wrongful Death and Survival Act claims asserted by plaintiff on behalf of plaintiff's mother, Hilda Floyd, are **DISMISSED** as to all defendants **WITH PREJUDICE;**

2. All personal injury claims for failure to warn (Count 1), design defect (Count 2), negligence (Count 3), gross negligence (Count 4), intentional infliction of emotional distress (Count 6b), and strict liability (Count 10) are **DISMISSED** as to all defendants **WITH PREJUDICE;**

3. All claims for breach of implied warranty (Count 8) and breach of express warranty (Count 9) are **DISMISSED** as to all defendants **WITH PREJUDICE;**

4. All fraud (Count 7), fraudulent misrepresentation (Count 5), consumer protection (Count 11), and conspiracy claims (Counts 12 and 13) are **DISMISSED** as to all defendants **WITHOUT PREJUDICE** to plaintiff's right to file an amended complaint in compliance with the attached Memorandum within 45 days if warranted by the facts;

5. The negligent misrepresentation claim set forth in Count 6a is **DISMISSED** as to all defendants **WITHOUT PREJUDICE** to plaintiff's right to file an amended complaint in compliance with the attached Memorandum within 45 days if warranted by the facts;

**IT IS FURTHER ORDERED** that if plaintiff decides to file an amended complaint in accordance with the law set forth in the accompanying Memorandum and the requirement that any such amended complaint be warranted by the facts, it shall be filed and served as follows:

1. Plaintiff shall file and serve the amended complaint on or before May 17, 2001. If additional time is needed, it must be requested by letter to the Court (Chambers, Room 12613), with a copy to defense counsel, on or before May 14, 2001. Two

copies of the amended complaint shall be served on the Court (Chambers, Room 12613) when the original is filed.

2. Plaintiff shall serve the amended complaint upon Philip Morris Incorporated, R.J. Reynolds Tobacco Company, and Liggett Group, Inc. by sending copies to counsel of record for those defendants by First Class Mail when the original is filed with the Court.

3. Plaintiff is granted leave to serve defendants Brown and Williamson Tobacco Corp.; British American Tobacco Industries; Lorillard Tobacco Co.; and R.J. Reynolds Tobacco Holdings, Inc., formerly known as R.J.R. Nabisco, Inc. with a summons and a copy of the amended complaint by Certified or Registered Mail as provided in Pennsylvania Rule of Civil Procedure 403.